Springer, J.,
dissenting:
The trial court made a specific finding that there was a “material change of circumstances” relating to the custody of Anna. The trial court is, of course, in a far better position than this appellate court to judge whether there had been such a change. It is only in rare and exceptional cases that an appellate court can *1145 rightly involve itself in the subtle decision-making processes employed by a trial court in making judgments relating to when custodial circumstances have changed and when they remain the same. This is not one of those cases.
As I see the facts in this case, there is really very little question but that there has been a material change of circumstances. As evidenced in the majority opinion itself, the trial judge attended meticulously to the need for finding a material change of circumstances before amending the custody decree. In addition to making specific findings of the escalating, “continuing problem with [the mother’s] disciplining and interaction with the minor child,” the court specifically noted “additional changes” in circumstances that centered on evidence in the hearing that the mother “does not encourage any type of relationship between . . . [the] father and the child” (described by the trial judge as a “frustration of the relationship between the child and the father”). Added to this is the court’s finding that there was “now” (as distinguished from “before”) a difficult-to-overcome “distance . . . between the parties” and the court’s finding that “circumstances the child has been subjected to and continues to endure while in [the mother’s] custody” were not in the child’s best interests.
The mother’s “frustration” of the relationship between the child and her father is perhaps the most visible of many palpable changes in custodial circumstances that are manifested in this record. As pointed out in Mosley v. Figliuzzi, 113 Nev. 51, 930 P.2d 1110 (1997), NRS 125.480(3)(a) requires that the court shall consider “which parent is more likely to allow the child to have frequent associations and a continuing relationship with the noncustodial parent.” There is nothing in the record that would cast doubt on the trial judge’s finding that the mother’s frustration of the father-daughter relationship should, in fact, be characterized as a “material change in circumstances.” The mother’s frustration of the father-daughter relationship was a late-developing condition that arose after the entry of the previous decree; however, even if it were a condition that, although present earlier, became “materially” aggravated during the interim period, the trial judge was still warranted in concluding that this kind of change, of itself, justified a change of custody in the best interests of the child.
There is ample evidence in the record that there was a steady degradation of the child’s welfare as she continued to live with her mother. It is plain that there are new “changed” circumstances that warranted the trial court’s decision that a “material” worsening of previous conditions justified the court’s intervention in the best interests of the child. For example, the trial court would have been justified in concluding that the mother’s con *1146 stant yelling and screaming at her daughter continued to escalate until it finally reached a level of intolerability that had an adverse effect on the welfare of the child. This alone could be seen as being a material change of circumstances. Similarly, even if there had been previous “frustration” of the father-daughter relationship, it would be a change of circumstances if these frustrations had become more and more intense until they materially and adversely affected the child’s welfare. The changes in circumstances are so apparent and so numerous in this case that, in my view, it would have been error for the trial judge not to have found that a material change in circumstances existed.[1]
It is obvious from the record that the trial judge was very much concerned about an ever-changing, ever-worsening condition in the life of the child, a “changed” situation which culminated in custodial conditions that gave the judge no choice other than to change custody. The trial judge was there. The trial judge lived with this case over a period of time and understood the children and the parents. The trial judge knew the parties and heard their testimony and the testimony of their witnesses. The trial judge knows this case; we do not. For this court to step in, a year and one-half later, and contradict the trial judge’s well-supported findings, and tell him that there were, in fact, no material changes in the circumstances of the custodial environment is, in my estimation, a gross abuse of appellate power. I dissent from the judgment of this court that returns this poor child to her mother, to live under conditions which the trial judge rightly concluded were not in the child’s best interests.

 One of the persuasive indications of change in this case is found in the testimony of family specialist Marjorie DiOrio, who testified that the child’s “emotional state has changed over time from the beginning when I first saw her to the last time I saw her. . . . She seems more agitated and more tense, more fragile over all.” (My emphasis.)